**HOUVARDAS v. WIXON.**

No. 11822.

United States Court of Appeals
Ninth Circuit.
Sept. 28, 1948.

Jerome A. Duffy, of San Rafael, Cal., for appellant.

Frank J. Hennessy, U. S. Atty. and E. R. Bonsall, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before HEALY, BONE and ORR, Circuit Judges.

ORR, Circuit Judge.

Appellant is an alien and has, by the Attorney General of the United States, been ordered deported under and by authority of the provisions of the Act of February 5, 1917, as amended. 8 U.S.C.A. § 155(a).[1] The Immigration and Naturalization Service found that appellant has, since May 1, 1917, been sentenced more than once to a term of imprisonment of more than one year because of conviction in this country of a crime involving moral turpitude and has not been pardoned.

Appellant, alleging that his right to apply for a pardon had not been exhausted and was still available and open to him, and, until such rights are exhausted the provisions of said Act of February 5 do not apply, petitioned the District Court for a writ of habeas corpus. The petition was denied. On this appeal from the order denying the writ the same contentions are urged.

Appellant admits, as he must, that by giving the words of the statute their plain and literal meaning his contention finds no support, but argues that in order that the purpose and intent of the law be carried out and the demands of justice met we should construe the statute to say that an alien falling within the class of one who has been convicted, sentenced and imprisoned for crimes involving moral turpitude cannot be deported if no pardon has been issued providing the opportunity to apply for a pardon still exists and the delay in securing a pardon was not the fault of the alien.

Appellant was confined in the state prison at San Quentin until January 23, 1945, upon which date he was released on parole. The parole period expired April 25, 1948.

On September 12, 1946, appellant sought to apply for a pardon but was informed that his application would not be entertained by the Governor of California until the provisions of California law outlining the procedure to be followed in applying for pardon had been complied with. He was at the time unable to meet the requirements of § 4852.06 of the Penal Code of California.[2] He did, however, become eligible to apply for a pardon on January 23, 1948.

In reading the statute we discern no ambiguity in the words used, and no absurdity attaches to a conclusion that Congress

---

[1] The part of the Act of February 5, 1917, pertinent to this proceeding, is as follows: "* * * any alien who, after May 1, 1917, is sentenced to imprisonment for a term of one year or more because of conviction in this country of a crime involving moral turpitude, committed within five years after the entry of the alien to the United States, or who is sentenced more than once to such a term of imprisonment because of conviction in this country of any crime involving moral turpitude, committed at any time after entry; * * * shall, upon the warrant of the Attorney General, be taken into custody and deported. * * * The provision of this section respecting the deportation of aliens convicted of a crime involving moral turpitude shall not apply to one who has been pardoned, * * *".

[2] Section 4852.06, Calif.P.C. provides: "No such petition [for a pardon] shall be filed until and unless the petitioner has continuously resided, after leaving prison, in the county in which it is filed for a period of not less than three years immediately preceding the date of filing the petition * * *".

meant exactly what it said, notwithstanding appellant seems to argue otherwise. His contention would require us to ascribe to the word "pardoned", in addition to its ordinary meaning, the following, in substance: "In the event the laws of the state in which the alien resides do not permit immediate application for pardon the Immigration and Naturalization Department shall take no action until such opportunity is afforded, an application made and action taken thereon." To so hold would be a rather complete example of judicial legislation.

In California, under the procedure prescribed by § 4852.06, the hands of the Department of Immigration and Naturalization would be tied for at least three years. The intent of Congress is set out in the committee report on bill S.5094 which became the Act of March 4, 1929, now 8 U.S.C.A. § 180b.[3] For a time it was the practice of the Immigration and Naturalization Department to order the deportation of aliens who had been imprisoned for crimes involving moral turpitude when paroled. That practice was discontinued. The committee report reviews the history of the practice and discontinuance and then goes on to say: " * * * Your committee is convinced that the law should be made clear that the alien is deportable immediately upon his release from confinement. If he belongs to a deportable class he should be deported even though it may not be against the public policy of the State, under whose laws he has been convicted, that he should be allowed to go at large on parole. The authority of Congress in relation to deportation of aliens is supreme and the law or practice of a State cannot and should not allow an alien to remain in this country for a moment longer than permitted by the act of the National Legislature, which alone is charged with the duty and responsibility of ridding the country of undesirable aliens. Accordingly, section 5 of the bill provides that the alien may be deported immediately upon his release on parole."

It has since been established that release from confinement on parole permits immediate institution of deportation proceedings. Lu Woy Hung v. Haff, 9 Cir., 78 F.2d 836, and cases cited.

The State of California has not complained of the action taken by the Attorney General of the United States in ordering appellant deported. We are not called upon to consider the rights of the state because of that failure.

■ The Attorney General has, upon request of appellant, granted certain stays of deportation. Appellant now construes the favors thus extended as an admission by the Attorney General that his claimed interpretation of the deportation law is correct. No such conclusion is justified. The stays were given to afford an opportunity to appellant to bring himself within the provisions of the law which would exempt him from deportation.

The order of the District Court is affirmed.

---

[3] "An alien sentenced to imprisonment shall not be deported under any provision of law until after the termination of the imprisonment. For the purposes of this section the imprisonment shall be considered as terminated upon the release of the alien from confinement, whether or not he is subject to rearrest or further confinement in respect of the same offense."