**Petition for Naturalization of Hermenegildo Victoriano SANTOS.**

United States District Court
S. D. New York.
Dec. 17, 1958.

David N. Ilchert, Long Island City, for the Immigration & Naturalization Service.

Hermenegildo Victoriano Santos, pro se.

BICKS, District Judge.

Numerous issues are raised in this contested naturalization proceeding, among them being whether an outstanding final finding of deportability is an effective bar. The material facts bearing on that issue are not in dispute.

Petitioner, a native and national of the Philippines, last entered the United States on September 26, 1951, as an accredited official of the Philippine Government. As such official, his status was that of a nonimmigrant.[1] It continued until October, 1953 when his connection with that Government apparently terminated. He has stayed on as a private entrepreneur. Deportation proceedings were thereafter instituted against petitioner by service of a warrant of arrest upon him on February 11, 1955. After a hearing before a Special Inquiry Officer it was found that petitioner was deportable under § 241(a) (9) of the Immigration and Nationality Act, 8 U.S.C.A. § 1251(a) (9), in that he failed to maintain the nonimmigrant status in which he was admitted.[2] Upon appeal to the Board of Immigration Appeals the Special Inquiry Officer's findings were sustained. Petitioner did not seek judicial review of the administrative determination; instead he attempts to attack it in this naturalization proceeding.[3]

The Government contends *inter alia*, that § 318 of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1429 —the so-called "priority provision"— precludes granting naturalization to the petitioner. Before the enactment of a "priority provision" in the immigration and nationality laws an alien who was both deportable and eligible for naturalization, frequently indulged in a race against the Attorney General seeking to gain citizenship before the latter succeeded in obtaining a final adjudication of deportability. The practice was for both the deportation and the naturalization proceedings to be conducted concurrently. The final conclusion of either automatically terminated the other. See Shomberg v. United States, 1955, 348 U. S. 540, 543–544, 75 S.Ct. 509, 99 L.Ed. 624.

To remedy this situation, Congress enacted § 27 of the Subversive Activities Control Act of 1950, 64 Stat. 1015, 8 U. S.C. § 729(c) (1946 Ed. Supp. V).[4] That section interdicted naturalization or the final hearing of naturalization petitions in instances where a final finding of deportability was outstanding or during the pendency of a proceeding to obtain such a finding. See United States ex rel. Jankowski v. Shaughnessy, D.C.S.D.N.Y. 1950, 93 F.Supp. 7, affirmed 2 Cir., 1951, 186 F.2d 580. The material portion of § 318 of the Immigration and Nationality Act, 8 U.S.C.A. § 1429, which carried forward this "priority provision", reads:

"Notwithstanding the provisions of section 405(b) of this Act [the "savings clause"], and except as provided in sections 1438 and 1439 of this title[5] no person shall be natur-

---

1. See § 3(1) of the Immigration Act of 1924, 43 Stat. 154, as amended, 8 U.S.C. § 203(1) (1946 Ed.), now 8 U.S.C.A. § 1101(a) (15) (A).

2. Petitioner was granted voluntary departure in lieu of deportation but if he failed so to depart, when and as required, he was to be deported.

3. Three private bills, introduced in Congress on behalf of petitioner to change his status to that of an alien lawfully admitted for permanent residence, failed of enactment.

4. Section 27, in material part, provides: "No person shall be naturalized against whom there is outstanding a final finding of deportability, and no petition for naturalization shall be finally heard by a naturalization court if there is pending against the petitioner a deportation proceeding pursuant to a warrant of arrest issued under the provisions of this or any other Act * * *."

5. Section 1438 deals with the rights of former citizens of the United States who lost their citizenship by reason of having entered or served in the armed forces of any country at war with a country with which the United States was at war during World War II and is not applicable to the instant case.

Section 1439, insofar as here material, permits naturalization of a person who

alized against whom there is outstanding a final finding of deportability pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act; and no petition for naturalization shall be finally heard by a naturalization court if there is pending against the petitioner a deportation proceeding pursuant to a warrant of arrest issued under the provisions of this chapter or any other Act. * * "

Petitioner urges (i) that § 318 is inapplicable to him because he served honorably in the armed forces of the United States [6] and (ii) that in this proceeding the Court has the power and should set aside the final finding of deportability.

In support of his first contention petitioner relies not upon § 318 as enacted but rather upon the following statement in the Conference Report [H.R. Rep.No. 2096, 82d Cong., 2d Sess., p. 129 (1952)]:

"(8) The Senate bill [S. 2550] prohibited the naturalization of an alien against whom deportation proceedings were pending. This provision was not contained in the House bill [H.R. 5678]. The conferees agreed to retain the Senate provision exempting from it [however,] aliens who have served honorably in the Armed Forces of the United States and who are seeking naturalization on this basis either while so serving or following their honorable discharge."

The legislative history of § 318 demonstrates that petitioner's reliance is misplaced. The critical provision of the Senate Bill [S. 2550, 82d Cong., 2d Sess., § 318 (1952)] stated:

"Notwithstanding the provisions of section 404(b) [the savings clause in S. 2550], no person shall be naturalized against whom there is outstanding a final finding of deportability pursuant to a warrant of arrest issued under the provisions of this or any other Act; and no petition for naturalization shall be finally heard by a naturalization court if there is pending against the petitioner a deportation proceeding pursuant to a warrant of arrest issued under the provisions of this or any other Act * * *."

The House Bill [H.R. 5678, 82d Cong., 2d Sess. § 318 (1952)] did not contain a like provision. To be noted is that § 318, as it finally emerged, added a significant exception to the bill as proposed by the Senate. Immediately following the reference to the "savings clause" there was added "and except as provided in sections 1438 and 1439 of this title". True, the two exempted sections deal with persons who have served honorably in the armed forces. But petitioner's difficulty is that he neither predicated his petition for naturalization upon nor can he bring himself within either section 1438 or 1439. See note 5, supra. He petitioned for naturalization on April 24, 1952 under § 324a of the Nationality Act of 1940. Whether that section or, as he now urges, § 324 of the Nationality Act of 1940 or § 329(a) of the Immigration and Nationality Act of 1952, 8 U.S.C.A. § 1440, be deemed the appropriate one to apply to this case need not be resolved

---

has served honorably in the armed forces of the United States for a period of time aggregating three years, if the petition is filed while the petitioner is still in the service or within six months after the termination of such service. This section likewise is inapplicable here because the petition for naturalization was not filed within the prescribed time.

6. Petitioner, during World War II while in his homeland, joined the organized military forces of the Government of the Commonwealth of the Philippines. On July 26, 1941, the President of the United States duly called and ordered all of said organized military forces into the armed forces of the United States for the period of the then existing emergency. They were released from the service of United States armed forces on June 30, 1946. See 3 C.F.R., 1943–1948 Comp., p. 1075 (1957).

since no one of them would take it out of the ambit of § 318. The Conference Report, supra, indicates a purpose to make some provision for aliens who served honorably in our armed forces. The extent to which the Congress intended to bestow benefits upon that group is reflected in § 318 of the Act. See Application of Chin King, D.C.S.D.N.Y.1954, 124 F. Supp. 911. When Congress intended to grant the privilege of naturalization to aliens who served in our armed forces notwithstanding an outstanding final finding of deportability it did so in unmistakable language. See, e. g., 8 U.S. C.A. § 1440a. Petitioner cannot avail himself of that enactment, however, since it applies only to aliens who served between June, 1950 and July, 1955.

Petitioner's second contention—that this Court has the power in the instant naturalization proceeding to review and set aside the administrative determination of deportability—is without merit. An alien may obtain judicial review of a final order of deportation by an action for a declaratory judgment and injunctive relief under § 10 of the Administrative Procedure Act, 5 U.S.C.A. § 1009, as well as by a writ of habeas corpus. Shaughnessy v. Pedreiro, 1955, 349 U.S. 48, 75 S.Ct. 591, 99 L.Ed. 868. A naturalization proceeding, however, may not be availed of for that purpose. Petition of Terzich, 3 Cir., 1958, 256 F.2d 197, certiorari denied, 1958, 79 S.Ct. 66; In re Muniz, D.C.W.D.Pa.1956, 151 F.Supp 173. Cf. Banks v. United States, 5 Cir., 1953, 204 F.2d 583; Jew Sing v. United States, 9 Cir., 1953, 202 F.2d 715; United States ex rel. Walther v. District Director of Immigration and Naturalization, 2 Cir., 1951, 189 F.2d 517; United States ex rel. Jankowski v. Shaughnessy, supra; In re Kiseleff's Petition, D.C.S. D.N.Y.1955, 135 F.Supp. 314.

Accordingly, the Court is constrained to hold that the outstanding final finding of deportability pursuant to a warrant of arrest requires denial of the petition for naturalization *sub judice*. This disposition is without prejudice to petitioner's right to reapply for citizenship in the event that he ultimately prevails in appropriate proceedings to set aside the outstanding administrative determination of deportability.